The case is submitted. We've got another U.S. 2010-51-19. Good morning. May it please the Court. I'm James Boland, representing Timothy Holmes in this appeal. This appeal involves a contract action against the Navy for a breach of two settlement agreements, two agreements settling Title VII employment discrimination claims. On the government's motion to dismiss, the Court of Federal Claims concluded, first, that it lacked subject matter jurisdiction over these two settlement agreements because they were not money mandating, and, second, that Holmes' claim was time barred by the six-year statute of limitations period and was not entitled to the accrual suspension rule. We believe that both these decisions were in error and should be reversed. With respect to subject matter jurisdiction, this appeal presents an opportunity for the Federal Circuit to clarify what I believe is a fundamental question of the Court's jurisdiction over contracts with the United States. A binding contract with the United States in itself creates an enforceable right for money against the government. Well, I mean, let's explore that a little on the other side. We'll probably come back. But at the end, I mean, the government does kind of consolidate the argument. I mean, they say, as I understand in their brief at the end, that they're not saying that Title VII settlements cannot be the precipitant factor for jurisdiction money mandating. They're just saying in this particular case, this was not a money mandating settlement contract, whatever we want to call it. Do you—I mean, there could be settlement agreements or contracts that are not—do you agree that there could be settlement agreements that are not money mandating? I think there could be, but I think this—maybe this is a subtle distinction. The government, in their brief in the end, indicated that—I think they characterized it as a breach of an obligation to pay money, and we would disagree with that characterization. A settlement agreement does not have to spell out in specific terms that money will be paid. I think the government has conceded jurisdiction over Title VII agreements only to the extent that the terms specifically state that money would be paid. Well, in our typical settlement agreements in personnel areas, if you rescind whatever actions, say you're going to clean up the pages and do any kind of restoration, I mean, the typical thought, and that's expressed in the EEOC regulations, is it not, that you've got two remedies for that. If the government doesn't do what it said, i.e., if they don't clean up your personnel record, then you go in and you tell them to clean it up. It's kind of a prospective remedy. And the other remedy that seems to be available is that the settlement agreement is there for all, and you're back to square one, which is you're challenging some action the government took against you. Neither of those is money mandating, is it? It involves some sort of money remedy. Right. So that's your typical settlement agreement. So what makes this different? Well, our position is that the existence of an administrative remedy does not foreclose the possibility of recovering money. And the trial court pointed to the existence of an administrative remedy essentially as kind of announcing a rule that that would be the first remedy, and money is almost a last resort. And our position is that just the existence of that remedy does not foreclose the possibility of money. So what is your legal view, that even if money is not the first resort, but if there's a possibility of money damages as a last resort, then that's sufficient to give the court a claims jurisdiction? If the claim, if a plaintiff identifies an express contract with the United States and the government does not comply with its promise to perform and that breach damages, causes actual damages to the individual, that individual has stated a valid claim under the Tucker Act. That's our position. I'm not aware of a Federal Circuit decision that has addressed this on point, but there are at least several Court of Federal Claims decisions that have helped. Well, I mean, you don't determine whether or not it's caused damages until the end. That's the sort of answer, not the question. You can't determine at the threshold whether or not there was a causation of damages, right? Correct. So what's the standard the judge is supposed to apply? If it offers the potential? If the claim, if the claim is for damages and there are facts in the complaint, and the basic pleadings demonstrate, have stated a valid claim, have stated facts that might support, if proven, that the individual was damaged, then they have at least passed that initial jurisdictional hurdle to move forward in the case. I mean, at this point, the government has not answered the complaint. So what you're saying is in a typical case for a settlement, if he had come in in a timely fashion, and this was six months after, and he's coming in and his complaint just says, they said they were going to expunge my record, they didn't expunge my record, then on its face he hasn't alleged any harm, so the Court of Claims would not have jurisdiction over that particular settlement. Correct. Correct. If he's not claiming that he was damaged by that breach. And that's our basic position. I think that the court— You don't think really any contract where a person can make a colorable claim to monetary damage as a result of a government's breach, there's automatically jurisdiction of the Tucker Act. As a general rule, yes, although we certainly recognize that there are certain categories of cases that can be carved out. Like plea bargains. Like a criminal plea bargain. That's a class that the Supreme Court has identified. Why would that get different treatment from the settlement agreement here? I mean, you could certainly imagine that if the government breaches a plea bargain, the person would have recourse to the means of actual damages, and they very well could have actual monetary damages as a result of longer incarceration or a variety of wages, whatever, as the breach of the plea agreement. So the same sort of policy thing is carried over. So why is that different? I agree, but I think as a basic matter, the courts have held that criminal— the ability to enforce the criminal justice system is kind of inherent to the sovereign power of the government, and it's something that is unique. And the courts have looked at that and have determined that it's appropriate for only the district courts that had jurisdiction over the initial criminal matter to handle those. But without even disagreeing with that standard, I think there is no precedent that takes Title VII settlement agreements away from the Tucker Act. Borrowing from the circuit's analysis in the Massey decision, that involved a Military Claims Act case and an agreement to pay an MCA claim, and the court essentially looked at the statutory scheme of the MCA and analyzed it and said, well, the statutory scheme does not place jurisdiction over an agreement to pay an MCA claim elsewhere, so therefore it would be subject to the Tucker Act. Well, let me ask you, in the—so you would say that for a complaint, the Court of Federal Claims to pass muster under the Tucker Act, there would have to be a claim for money damages, right? Correct. Okay, now here you do have a claim for money damages, but you don't specify an amount. Right. So I assume that you're—the assumption has to be that he's claiming in excess of $10,000 to be in the Court of Federal Claims. Although my understanding of the Tucker Act is that the Tucker Act would still include anything up to $10,000. But, okay, the presumption— But I assume he's probably—that's right, he's probably claiming more than $10,000. Probably. And is the—are the damages here the compensation he would have received if he had obtained employment that he says was frustrated by negative references? Correct, and perhaps offset by any other mitigating circumstances, maybe the difference between, you know, wages received versus what they would have been but for the Navy's alleged breach. Now, one of the—there is a doctrine, and correct me if I'm wrong, I think in damages law that when there's been a breach of contract, you're entitled to obtain damages that are, I think, not—and I emphasize not—remote and consequential and speculative and so forth. Where does that doctrine mesh with the question of jurisdiction? In other words, I mean, I assume that if the government would say that, the government would say that, okay, assuming there's jurisdiction here, these damages are, you know, speculative, they're remote, and so forth. Where does that proposition, if it does, play into the jurisdictional input? I think that analysis would take place on either motions or summary judgment at a point when, you know, whether or not the plaintiff is able to establish damages, whether he would prove that he's entitled to them, but I don't think for purposes of the threshold jurisdictional question, whether he needs to establish actual entitlement at this stage, and I think that's what that inquiry would require. I understand. I mean, that's getting sort of to the merits of the damages claim, but I'm just sort of a little bit maybe hazardly thinking out loud here about, you know, that damages can't be too remote or speculative. Right, and we would not disagree with that fundamental principle, but again, I think that that would be an issue that would probably be explored later on in the case once the government has answered the complaint and there's been fact-finding or— Can I move you on to the statute of limitations? Certainly. You've got to prevail on all three of these things that are thrown at you. Right, right. All right, I'm struggling with the statute of limitations. I understand your argument in terms of what the court of claims chief judge relied on, but paragraph 70 of the complaint seems to me, at least, to clearly— I mean, we've got to take the assertion as true. This is Mr. Holmes' assertion, and he says he's attempted to obtain employment multiple times since 1999, but has largely been unsuccessful because of his personnel record. So why isn't that sufficient to trigger at least the 99 date? I mean, this is what he's saying. He knew there was harm, and so in the second part of my question— Well, go ahead. Okay. I think that lies at one of the fundamental errors the court made in interpreting paragraph 70 as well as paragraph 40, which is similar. But I think 70, frankly, in my reading is that 70 is much smaller. Is the key one. Okay. That allegation is simply saying today, when this complaint was filed in 2009, now that he knows the Navy did not expunge his record, and now that he knows that the Navy did not comply, that has given him sufficient information to believe that the Navy's noncompliance likely contributed to damages earlier. But if he was largely unsuccessful in obtaining employment starting in 1999, I mean, the standard here, well, I guess, do you agree that the standard here, whether it was whether or not it was inherently unknowable? I agree that on statute of limitations, inherently unknowable. The circuit has certainly said that that is the more precise characterization of the standard, although I think the circuit has also said that inherently unknowable is interchangeable with reasonably should have known. And I think as long as those two standards are interchangeable, that means that inherently unknowable must, in determining whether something is inherently unknowable, the court must apply some sort of reasonableness analysis. Inherently unknowable does not mean impossible. You know, we're not contending that these records were physically concealed from Holmes for these years or that if he had submitted FOIA requests or had sought them. Okay, no, I know. But the line is somewhere between that and the other. And so the question is where the line is drawn. And I think what distinguishes this case from most of the cases, including cases that have discussed records and availability of personnel records, for example, when an individual is discharged from the military, they're expected to know the status of their discharge at the time of the discharge and beyond. But here there was a specific promise from the Navy. And I think the analogous case is the LSS leasing case. The court will look at the circumstances and will look here. The Navy promised to take certain action. And I think that promise itself, and, in fact, with the 01 agreement in paragraph 39 of the complaint, they represented that they expunged the record four months later. That combination, I think, relieves the plaintiff of an obligation to continually monitor and to check up on the government. But it depends what your view is. It depends on the facts and circumstances of the particular case. Correct. And one of the facts here that strikes me as fairly compelling is the fact that the government had already blown this once. I mean, right? The first time, the 95 settlement or whatever. He knew enough to think, oh, there might be a problem. I mean, he had no loss of employment or anything as a result of the government's failure to act as it said it would. But he had enough wherewithal to say, oh, I'd better go and double-check this. And when he did, the government, in fact, hadn't acted. So in that context, it seems hard to me that he wouldn't have, his antenna at least wouldn't have been up in this circumstance so that, you know, another person without that prior experience may have said, oh, this was inherently unknowable. But this guy had a different history with the government. Right. And I agree that that's there, but I think that combined with the promise and the fact that the government complied with all other material respects, in all material respects with the 1996 and 01 agreement, provided him employment for several years and took the other steps, I think that still is not sufficient to kind of charge him with the statute of limitations granted accruing when the government breached the agreement. Well, the difficulty is that in most circumstances, then, this could go on forever. Right? I mean, what happened in 2006, then, to trigger it? Would you say that was a triggering event? In 2005, the triggering event was when the union first notified him, when he first found out from the union, the union hall, that they were now officially conducting background checks and would access his Navy record. He was blacklisted, and that was a key fact. So if he hadn't filed his complaint here until 2013, you'd say that that would have been the trigger. Correct. So what's the difference between that and what he alleges started happening in 1999, which is he wasn't getting most of the jobs he thought he should have gotten? Because he had no idea that the Navy's breach would have contributed to this. He was applying for jobs with intervening third parties. He was not seeking employment with the Navy. I think that, and this might go into the issue of the remoteness of damages, but in terms of the statute of limitations and being on inquiry notice, when he was applying for jobs, which is an inherently subjective process, that did not involve the Navy at all, and he had no reason to believe that the Navy's breach years earlier was affecting that. There are many reasons why someone might not get a job, and I think that is sufficient to kind of suspend the accrual of the statute of limitations period. I know I'm beyond my time. Thank you. Thank you. And we'll restore your three minutes. Okay, thank you. Mr. Schroeder? And if you need a few more minutes, we can adjust your time. May it please the Court. There are two issues, two jurisdictional defects in this case, either of which is sufficient to affirm. First, the plaintiff indisputably waited more than six years to file his claim, so his claim is time barred. Second, the contracts at issue do not mandate the payment of money damages for the alleged breaches. Can I start you there, then, because I'm struggling with what appears to be the government's position. If he entered into an agreement and it just said, we're going to pay you $45,000 within the next six months, is that sufficient? Is that money mandated? Does that satisfy a contract that obligates someone to pay for breach? Of course, we'd have to look at the particular contract, but that would be certainly much closer if not. So you're not saying that the contract itself has to have an affirmative statement, which is, and we will pay you money in case we breach it. You say you look at the terms of what's included in the settlement, and you look at that and discern whether or not, if it's breached, there's some money at stake. Is that the test? Yes, you look at the totality of the settlement agreement, which the trial court did in this case, and then determine whether it's money mandating. The test is- Well, let's assume that we have even, I mean, well, this case, or even a stronger case, where clearly, day three, his records are in expunge, and he absolutely positively loses any employment opportunity. He's unemployed for however long it takes to litigate this and to get the government to expunge it, and that loss of income, loss of jobs, were a result of the government's failure to do what it promised, which is to expunge the record. Under those circumstances, your view is that he wouldn't be entitled to money damages for his losses suffered as a direct result of the government's failure to act? Correct. That's what the court found, if I understand you, under the contracts at issue in this case, including all the remedies that one contract specifically provides, one of which is to go back to the district court if you have an issue. The EEOC regulations, which specifically provide a remedy, those were remedies that the parties agreed to. They could have spelled out a monetary remedy. They did not. No, but the government, as I understand it, Mr. Sherry, said at the end of its brief, and I think this came up in a previous argument, that it acknowledges that there could be jurisdiction over an EEOC case settlement agreement, correct? Yes, under certain narrow circumstances. And you're saying that in the hypothetical that Judge Prost just posited to you, that still would not fit? That's correct. Now, why precisely would her hypothetical not fit? Because I recall she said they didn't correct the records as a result of the failure to correct the records. He lost a job. He was out of pay and so forth. Now, why does her hypothetical not fit jurisdictionally? And that's a—I think the trial court held in this case that rather than explaining which portions of the agreement support a fair inference of a substantive— No, I'm talking generally here. Leave aside the whole question of a consent decree and, you know, how that may or may not play in, in the district court retaining jurisdiction. Just why does—why, given, one, the government's acknowledgment that an EEOC settlement agreement can be covered jurisdictionally, and two, given Judge Prost's hypothetical, why does her hypothetical not fit jurisdictionally? Well, there's a difference between agreeing to an administrative—take an administrative step, which here is to correct or to change a personnel file, and agreeing to actually pay money. One, to pay money— Did the EEOC pay money? My understanding is that in this case the EEOC said it could not pay money in the regulations. Again, getting back to her example, leaving aside—assuming the EEOC can't pay money, why does her example not fit? Well, the question is whether— Again, we're talking generally, not in this particular case. Whether the contract is—can be fairly interpreted as mandating compensation by the government. Under certain circumstances, if there's a breach and if there are damages that have emerged indisputably as a result of that breach. Yes. Why can't it be interpreted? And that would—I believe your hypothetical, if we take out the fact that there were other remedies, is certainly closer to the line of money mandating, and the question is— What about in a standard personnel case? Like, if you don't get a penalty and you prove that there was a Title VII violation, so you have a settlement agreement and you say, we're going to promote you to a GS-7, and we're going to make that retroactive for three years. So the government pays the retroactive money, but it doesn't promote her. So, clearly, if she prevails three years down the road, you're going to order her promotion. But are you also going to give her retroactive compensation for the period in which the government didn't promote her? I don't know the answer. Clearly enough, if that's the settlement agreement and there's a breach of the settlement agreement and she doesn't get a promotion at the time she's supposed to, is that enough to inherently put the government on the hook for damages that would be money mandating? That could. That may implicate the Back Pay Act, and there may be statutory bases. So, you know, I don't know from that circumstance. But if it doesn't implicate in a particular statute, would the settlement agreement enough be adequate to be money mandating? Well, it's possible. I don't know if the answer is which side of the line. There's a spectrum here of settlement when contracts are very clearly money mandating and those that are not. And this one, we believe, crossed the line into non-money mandating. Why? Because, as the trial court said, rather than explaining which portions of the arraignment support a fair inference of the subjective right to money damages, plaintiff merely states the conclusion that money is the default remedy and that the default remedy- I forgot what the trial court said. So you think the contract has to expressly indicate monetary remedies for breach before it could be money mandating? No. It does not actually. The case law, Rick's Mushrooms, and Navajo Nation, and the White Apache Mountain, basically the standard is whether the contract can be fairly interpreted as mandating compensation by the federal government. So it is definitely not. It does not have to be expressly. It just merely has to be fairly interpreted as mandating compensation by the government. Mr. Chair, when you say fairly interpreted, you say fairly interpreted to mandate compensation within the setting of a given breach. Is that what we're getting at? Yes. So in other words, the analysis is, okay, we have an agreement here. We posit breach X. Can one looking at the contract discern money damages being contemplated for breach X? Is that what it comes down to? Yes. And as Your Honor pointed out, there's this remoteness and speculative nature of the allegations that are made in this complaint. What's speculative about the government didn't do what it was obligated to do, which is to clean up my record, and as a direct result of that, I was denied employment. Therefore, I should be compensated for the money I lost for the lack of employment. What's so speculative? Well, there was not any jobs which were identified that he lost. It was just very broad. Well, that's a matter of proof. He may lose at the end of the day. We're talking about whether or not he gets the opportunity to make that case, and he's clearly alleged some loss. So you're right. He may very well lose at the end. He may prove that there were reasons other than the records that resulted in his not getting any jobs, but what does that have to do with whether or not we have jurisdiction on money management measures? Yes. Well, again, basically the court made a judgment call, and this court has to make the same judgment call in this case. We don't have to make the same judgment call. Well, I mean, you also have to make a judgment call in this case. It could be a different one because this is a de novo review, as I understand it. I mean, I think it's a pretty important issue, I guess. Did you have something more on this point? Well, I guess I'm sort of struggling because I don't appreciate at all where the government is drawing this line. Your argument hasn't been very helpful to me in this regard, I'm afraid. I came in with some confusion, and my confusion has only been magnified, and usually it goes the other way. Maybe you could try one more time to tell me why, if there's no speculation, if the settlement agreement was that the government would expunge, government didn't expunge, he lost a concrete job, there's a letter in the record that says you would have gotten this job but for this government negative reference. Why isn't that contract money mandating? Why doesn't it automatically fall under the Tucker Act? And there are no...it may, again... It may, but that doesn't help me. I understand, but... He doesn't have to win his case in order to have jurisdiction. Well, he has to show that this promise that the government made, which was basically to go in and make a correction of his files, that this promise naturally leads to monetary damages in the event that the promise is not fulfilled. Well, so that's why... Okay, I understand that sentence, but the hypothetical is quite simple. The settlement says nothing about money. The settlement agreement says we'll clean up your record, period. Yes. You don't clean up his record, and there's indisputable clear proof that even the government stipulates to that he lost money as a result by having lost a job. Yes, and... Is that money mandating? And does that mean that the EEOC regulations are off the table and the statute, I mean, the consent decree is off the table? Is that a contract over which the Court of Federal Claims has jurisdiction under the Tucker Act? Again, I can't answer that concretely, I apologize. So you're saying it may be. You're acknowledging that we should reverse, because those are the facts of this case. The facts of this case are we infer everything in his favor. He's alleging damages. The damages seem quite reasonable. He's alleging he lost specific jobs. That seems reasonable to me under a complaint standard. So those are the facts of this case. So your it may be doesn't help me decide this case. In fact, it helps me lose this case as far as I'm concerned. Your Honor, I just want to add a couple of other facts which are present in this case that I don't believe are in the hypothetical, which is that they agreed specifically to a remedy in the district court, to an exclusive remedy. That's with respect to one of the agreements. And the other agreement has EEOC regulations in them. And I think that really tips the balance here, because the parties didn't- Your Honor, aren't EEOC, the government has said that it's not saying that an EEOC settlement agreement can never be the subject of a court of federal claims case. So EEOC regulations are always going to be in the environment, so to speak. I mean, it's an EEOC case. Yes. They settle it, they settle the EEOC litigation. You're always going to have EEOC, I think EEOC regulations lurking, so to speak. So taking it that way, again, can you help indicate- It seems earlier that you said if you have an agreement and you're claiming a given breach, the question becomes would one discern from the subject of the agreement that damages of a monetary nature would be contemplated for this type of breach? And that seemed to be the test you were eliciting. And then you said that, well, you know, you pointed to the fact that this was speculative here. And then we got into the issue of, yeah, that may well be. I think Judge Prost said he may lose on the merits. Yes. Isn't it maybe the case that given the particular breach that's alleged here, that given your test, can one discern a contemplation of monetary damage that it's met? Well, we believe that it wasn't met in this case. You say that's mainly because, leaving aside the consent issue for the 2001 agreement, the consent clause- You're saying that it's because of EEOC regulations being present. Well, that's a very large factor, is that essentially there are regulations that say if there is a breach, you have to come to the EEOC. What are the time limits for going to the EEOC? I believe it's within 30 days of when you knew or should have known. Well, here, how many know, say he applies for a job six months after, he can't go to the EEOC. And that would be the same analysis, and unfortunately, I believe- No, you can continue. That's all right. We have more questions. Okay. That would be the same analysis as the statute of limitations analysis, which is inherently unknowable. When does the claim- Well, before we get to inherently unknowable, can I just, because now we've entered into the EEOC regulations. It's not the government's position, is it, that because in Title VII cases you have EEOC regulations, and those provide clearly you can't get monetary compensation under these regulations, there's a limited relief that you can get, that that's the exclusive avenue of review, and for that reason, a Title VII settlement cannot be money mandating? I didn't understand that to be the government's position. That's an important point for me. No. Is that the government's view? In this case, we actually did not argue a preemption below. The court didn't reach it. So the existence of the EEOC regulations and the fact that they constrain the EEOC in terms of what they can do should have no bearing on whether or not we determine whether or not the settlement is money mandating. Well, I think that we were arguing that those regulations shed light on the money mandating, the lack of a money mandating agreement. Well, I looked at, in that regard, you said in the 2006 settlement agreement, I'm having a hard time finding any reference to the regulations which would lead me to conclude that that would be like the exclusive remedy. Is that what you were suggesting? I think if I'm looking at the right one, it's 832? Page 32. It's not, there's no reference to the EEOC regulations in here. What we're arguing is that there, and in the Schnell case, the court of federal claims held this, that the remedies under, that the remedies, the EEOC remedies were to seek specific implementation or have his complaint reinstated. So he could have had his complaint reinstated by going to the EEOC. Okay, so in this circumstance, if his complaint is reinstated, where are we in the process? His complaint is reinstated, does he get his job back or he's suspended but employed? I mean, what does that mean? He could seek, I believe he could seek whatever relief he could have sought originally, including filing a discrimination claim for money damages. But you're not suggesting that that was the, there's some sort of preemption here, that that would have been his exclusive remedy? No, we did not address that. We did not move, we really focused on the money mandating issue. Can I move you to the, just the statute of limitations and the standard that the government thinks ought to be applicable here. So inherently unknowable, is that something more than have reason to believe? Can you kind of tease out what that standard means? Yes, the inherently unknowable is what is meant by has reason to believe. That's what the Young case said, should have known. If you agree it's reason to believe, why did he have reason to believe that the government hadn't done what it promised to do? It's the, the reason to believe means it's inherently unknowable. So I think inherently unknowable explains what is meant by reason to believe. It's not a subjective test, it's whether... A reasonable, go ahead, a reasonable person would have... Whether he was aware of his alleged injury, whether he was aware of his potential claim. In other words, he filed job applications and the way these courts view these types of cases, if someone files a job application and is notified that they haven't gotten the job and they're alleging some sort of discrimination or unlawful conduct on behalf of the government, then the statute of limitations begins to run at the time they receive notice that they weren't getting the job. Can I just quickly ask one question? I think you started off, and it's been a long time now, but you started off by saying for two reasons. I know the, has the government abandoned its third argument on the consent order, whether or not this is a consent order or not, or are there other reasons that the government thinks... That is tied into really the jurisdictional money mandating argument. And that's another independent reason is that this was a consent decree, and for reasons stated in our brief, even if the 1996 agreement, breach of that agreement, is allowed to stand, that claim, then the 2001 agreement being a consent decree should be dismissed because the court does not have jurisdiction to entertain claims that arise from a consent decree. The district court has exclusive jurisdiction. Thank you. Thank you, Mr. Schroeder. Mr. Boland, why don't we, we took a lot of extra time, why don't we leave four minutes for it? Thank you, Your Honor. I'd like to just quickly address a couple of points. The government compared the facts in this case to other cases where courts have found that when an individual applies for a job, the kind of immediate injury is not receiving that job. But I just think it's important to note that this is not like a typical employment discrimination case. This is not, Holmes was not denied a job from the Navy or the victim of discrimination. At least the subject of this complaint, this involves breach of an agreement with the Navy, not the union or other shipping companies with whom he submitted job applications. So let me ask you, the difference between not getting a job before 2006 and getting a job after 2006 was that suddenly he became aware that they were doing background checks? Exactly. In May 2005 is when he became aware. But yes, it was the fact that he now became aware and knew from the union that they're conducting background checks and would check his prior government record. Prior to that date, he did not know that prospective employers were, or that the union was doing that. So you're saying the fact that he was applying for third-party non-governmental jobs that left him completely unaware that they would check his government record, and that's why, if he didn't get the job, he didn't assume it was some defect on his government record. Right, exactly. Except in 2005, once he started to acquire facts that would suggest that maybe the government didn't comply, and he was told by the union that he's essentially blacklisted. Doesn't everyone assume that when you apply for a job, somebody checks your previous employment history? I mean, that's why he wanted his record expunged, right? Because that's an assumption he made, that if he ever wanted another job, they would go to that, right? I mean, it's not clear to me why something new and different, so radically different, happened in 2005 that suddenly he realized, oh my God, yes, they are checking my employment record. Well, yes, but there are many reasons why someone might not receive a job offer, and I think in the context of employment, I mean, it's a very subjective process, and he did not acquire any specific facts that showed when he was denied a job that the Navy had failed to expunge his records. Nothing tipped him off. He did not expunge them last time. It's like once, shame on you, twice shame on me. The Navy didn't expunge them the first time around, and he had to go to court to get it done. So second time around, the Navy doesn't expunge them, he's not getting jobs. Why isn't that combination enough to say he should have known? I think the fact that in 1995 they did not expunge his record. He challenged that in 1996, and that was what resulted in the 1996 agreement. But I think it kind of relieved him of that suspicion because he was given employment for the next three and a half years. But then there was a whole other independent issue. I agree. It seems fair that it would relieve him of the suspicion as of the 1995 expungement that that's been taken care of. But there's a whole new incident, right? There's the stolen refrigerator. Right. So there's a whole new incident that's got a new marking on his record. The government represented in paragraph 39 of the complaint alleges the government stated in a July 2011, four months after the O1 agreement was signed, that the Navy represented that they did, in fact, expunge his record. So I think that representation, government officials are presumed to act in good faith. Holmes had no reason to believe that the government I think they didn't do it last time. That's the whole thing. But I don't know if just because the government, an official in the Navy five years earlier did not adequately expunge his record, I don't know if that's sufficient to overcome that presumption that the government would not act in good faith going forward. In terms of presumption, there's this inherently unknowable concept. I mean, he got his records really easily. The personnel records were easy for him to obtain, so he could have gotten them at any point in time. So how is that inherently unknowable? Well, first I would note that The difference is that he has no reason to suspect versus inherently unknowable. That's what it says. It's a really ridiculously high standard. I absolutely agree that it is a very high standard, but I think it has not reached the level of impossibility. And I think Well, the possibility would be he wasn't able to get his records, but here he clearly could have. I mean, the records didn't, you know, dissolve. It wasn't that he had to apply under the Critical Information Act, wait 24 months to get something back. I mean, this was not by any means impossible. I would point the Court's attention to paragraphs 41, 49, and 54 of the complaint. I think that demonstrates that in three separate times he requested his records, and three separate times in 2006, 2007, and 2008, the Navy provided different information. And each time he learned new information that received from the government, information that he believed should have been expunged. And so I think those facts alone suggest that it's not reasonable to shift the burden onto Holmes. And the government's promise to clear the records and to expunge them and essentially to keep them expunged, that's a promise that he can reasonably rely upon. And as evidenced by his at least three requests and receiving different pieces of information, it would be an enormous burden to shift to individuals to essentially continually monitor the government's promise. And I don't think in this specific case where there's a specific promise from the government to take certain actions with respect to the records that an individual should be expected to follow up and keep track of. That would be true any time the government says it's going to do something and doesn't do it. And under your logic, this should have known would never exist. Because any time the government says it's going to do something and doesn't do it, it's reasonable for the person to rely on that assertion. But most promises, there are other facts that would suggest, that would put that person on notice. If the government promises to deliver something and you don't receive it, then clearly you acquired information to believe that something was wrong or that a product's defective or whatever it may be. Let me ask you one question. There are various statements in the complaint. We referred to some of them, references to being turned down from jobs. There's paragraph 70 that says he was receiving certain jobs during this period. Assume that the case went back and that the court determined that it was error to say that he wasn't entitled to the benefit of the accrual suspension rule. If it goes back, would you agree that it's possible that discovery could reveal information that would suggest, in fact, he did know? Yes. And at that point, he might well lose the benefit of the accrual suspension rule. Yes. In fact, I think that's, you know, our bottom line position is that at a minimum, the court's determination here on accrual suspension was premature. It may be that when there is fact finding that maybe he knew or acquired information to be on notice at an earlier date. You're saying he might well get knocked out of the box on this point, but it's too early. Correct. Just based on what's in the complaint. Correct. Our basic position goes with respect to the money management provision as well. This was not decided on summary judgment. This was before the government answered the complaint. Our position is that the trial court dismisses too early. Thank you. Thank you very much. The case is submitted.